EVERETT RICE v. THE AETNA CASUALTY AND SURETY COMPANY.

(Filed 25 May, 1966.)

**1. Insurance § 47.1—**

In an action on the uninsured vehicle clause in a collision policy, allegations in the complaint that the vehicle causing the injury was an uninsured vehicle as defined in the policy, and conditional assertion in the reply that if, in fact, such vehicle was insured, the insurance was void because of the insolvency of the insurer, *held* not an admission that the vehicle causing the loss was covered by a liability policy, and therefore motion for judgment on the pleadings in favor of defendant was correctly denied.

**2. Same—**

In an action on the uninsured vehicle clause in a collision policy, evidence that the vehicle causing the loss was insured in another state, where it was registered and licensed, by an insurer there authorized to write the insurance, and that subsequent to the collision the insurer was placed in receivership because of its insolvency, and that a claim was filed with the insurer's receiver, *held* insufficient to support the court's conclusion that the vehicle causing the injury was an uninsured motor vehicle within the definition of the collision policy.

MOORE, J., not sitting.

APPEAL by defendant from *McLean, J.,* March 1965 Civil Session, as continued, of MADISON.

Plaintiff, a resident of this state, owned a GMC truck. On April 4, 1962, plaintiff purchased from defendant a liability insurance policy covering the operation of his truck. The policy, including a rider affording protection against personal injuries and property damages resulting from the negligent operation of an uninsured motor vehicle, conformed to the requirements of G.S. 20-279.21, in effect when the policy was issued.

Plaintiff, operating his truck, was, on April 30, 1962, in a collision with a Pontiac automobile owned by Charles M. Thornton. The Pontiac was licensed and registered in South Carolina, where Thornton resided.

Plaintiff instituted this action to recover $5,000 for personal injuries and $450 property damage. He alleged his damages resulted from Thornton's negligent operation of the Pontiac, an uninsured motor vehicle.

Defendant, answering, admitted insuring plaintiff on April 4, 1962 to the extent required by G.S. 20-279.21 on the date the insurance was written. It admitted plaintiff was injured by the negligent operation of the Pontiac. It denied the Pontiac was an uninsured motor vehicle, but was in fact insured in South Carolina, where the vehicle was licensed and registered, by Guaranty Insurance Ex-

change (hereinafter Exchange), a Missouri corporation authorized to do business in South Carolina.

Plaintiff, replying to the defenses asserted by defendant, alleged:

"* * * (I)f the said Charles M. Thornton had a policy of motor vehicle insurance on his said Pontiac automobile, said policy was with a bankrupt and insolvent company" and for that reason was not a policy meeting the requirements of G.S. 20-279.21 on April 4, 1962 when the policy was written, nor on April 30, 1962 when the collision occurred.

Defendant moved for judgment on the pleadings. The motion was overruled. Jury trial was waived. The court made findings of fact on which it rendered judgment for plaintiff.

*William J. Cocke and A. E. Leake for plaintiff appellee.*
*Landon Roberts (Meekins & Roberts) for defendant appellant.*

PER CURIAM. Defendant's assignments of error present these questions:

1. Did the court err in overruling defendant's motion for judgment on the pleadings?

2. Was there evidence on which the court could conclude that the Pontiac was "an uninsured motor vehicle" as that phrase is defined in the policy issued plaintiff?

The answer to the first question is "No." The complaint specifically alleges that the Pontiac was an uninsured motor vehicle as this phase is defined in plaintiff's policy. The conditional assertion in the reply that if, in fact, Thornton was insured as alleged by defendant the insurance was void because of the insolvency of the insurer, is not an admission that Exchange had issued a policy of liability covering the operation of the Pontiac.

The answer to the second question is also "No." The burden of proof rested on plaintiff to establish his allegation that the Pontiac was an uninsured motor vehicle. *Horn v. Insurance Company,* 265 N.C. 157, 143 S.E. 2d 70; *Hawley v. Insurance Company,* 257 N.C. 381, 126 S.E. 2d 161; *Crisp v. Insurance Company,* 256 N.C. 408, 124 S.E. 2d 149; *Fallins v. Insurance Company,* 247 N.C. 72, 100 S.E. 2d 214; *Strigas v. Insurance Company,* 236 N.C. 734, 73 S.E. 2d 788; *Williams v. Insurance Company,* 212 N.C. 516, 193 S.E. 728; *Jones v. Life & Casualty Company,* 199 N.C. 772, 155 S.E. 870; *King v. Insurance Company,* 197 N.C. 566, 150 S.E. 19; *Levy v. Auto Insurance Company,* 31 Ill. App. 2d 157, 175 N.E. 2d 607; *Hill v. Seaboard Fire & Marine Insurance,* 374 S.W. 2d 606; 12

Couch, Insurance, Sec. 45:628; 7 Am. Jur. 2d, p. 463; 46 C.J.S. pp. 456-7.

Plaintiff's policy reads: "The term 'uninsured automobile' means: (1) with respect to damages for bodily injury and property damage an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the North Carolina Motor Vehicle Safety and Financial Responsibility Act, neither (i) cash or securities on file with the North Carolina Commissioner of Motor Vehicles, nor (ii) bodily injury and property damage liability bond or insurance policy, applicable to the accident with respect to any person or organization legally responsible for the use of such automobile; . . ."

. Plaintiff's evidence with respect to the liability insurance covering the ownership or operation of Thornton's Pontiac was limited to: (1) a certificate of the North Carolina Commissioner of Insurance that Exchange had never been authorized to do business in North Carolina and (2) a certificate from the office of the Commissioner of Motor Vehicles that it had no record of the registration of a motor vehicle by Charles M. Thornton, nor did it have a record of proof of financial responsibility by Thornton.

Defendant's evidence was to the effect that the liability of the owner of the Pontiac for negligent operation was insured by Exchange under a policy expiring on April 11, 1962. The policy limited liability for injury to one person to $10,000 and $5,000 for property damage. The policy was extended or renewed by the insured for a period from April 11, 1962 to September 11, 1962. The renewal policy was written by insurer's agent, who was authorized to do business in South Carolina. The agent provided the Motor Vehicle Insurance Commissioner of South Carolina with a certificate to the effect that owner and operator liability for negligent operation was insured. Exchange was in May 1960 licensed to write insurance in South Carolina. Its license was renewed on April 1, 1961 and April 1, 1962. Its license to operate in South Carolina was suspended on August 24, 1962. A receiver was, on September 4, 1962, appointed by the courts of South Carolina for the assets of Exchange. The records of the receivership show Thornton's liability for the operation of the Pontiac was insured as alleged in the answer until May 22, 1962, at which time the insurance was transferred to a Ford automobile. On May 3, 1962 Exchange, at Thornton's request, employed a firm of insurance adjusters doing business in North Carolina to investigate plaintiff's claim. The adjusters reported to Exchange that the collision was caused by Thornton's negligent operation of the insured Pontiac. Plaintiff, in December 1962, filed a claim
‹ with the South Carolina receiver of Exchange for damages resulting

from Thornton's negligence. The receiver, in February 1963, acknowledged receipt of plaintiff's claim.

There is not a scintilla of evidence to contradict the allegations of defendant's answer that when plaintiff was injured Thornton's liability for the operation of his Pontiac was insured in South Carolina, where it was registered and licensed, by a company authorized to write the insurance.

The fact that Exchange was, subsequent to the collision causing damage to the plaintiff, placed in receivership because of its insolvency did not render defendant liable on the policy issued plaintiff. Such insolvency did not make the Pontiac an uninsured automobile, *Hardin v. Insurance Company*, 261 N.C. 67, 134 S.E. 2d 142; nor does the fact that Thornton procured insurance in South Carolina, where he lived, and in a company not licensed to write insurance in North Carolina bring plaintiff within the insuring provisions of the policy issued to him by defendant.

Plaintiff has failed to carry the burden of proving his allegation that the Pontiac was an uninsured automobile as that term is defined in the policy issued by defendant. The court erred in overruling defendant's motion for nonsuit.

Reversed.

MOORE, J., not sitting.