# IN THE SUPREME COURT OF TEXAS

══════════

No. 19-0885

══════════

ALLSTATE INSURANCE COMPANY, PETITIONER

v.

DANIEL WES IRWIN, RESPONDENT

══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

══════════════════════════════

CHIEF JUSTICE HECHT, joined by JUSTICE GUZMAN, JUSTICE BLAND, and JUSTICE HUDDLE, dissenting.

The Texas Insurance Code requires that every automobile liability insurance policy delivered in the state provide uninsured and underinsured motorist (UIM) coverage for unpaid damages. That way the insured is "legally entitled to recover" something after a collision with a UIM.[1] A vehicle is underinsured if its available liability coverage is less than the insured's UIM

---

[1] TEX. INS. CODE § 1952.106. In more detail, Section 1952.101(b) provides that:

> An insurer may not deliver or issue for delivery in this state an automobile liability insurance policy . . . that covers liability arising out of the ownership, maintenance, or use of any motor vehicle unless the insurer provides uninsured or underinsured motorist coverage in the policy or supplemental to the policy.

*Id.* § 1952.101(b); *see also id.* § 1952.101(c) ("The coverage required by this subchapter does not apply if any insured named in the insurance policy rejects the coverage in writing. . . ."). Section 1952.106 complements Section 1952.101's requirement for UIM coverage by providing that:

> Underinsured motorist coverage must provide for payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor

coverage.[2] To recover in a suit against an insurer for UIM benefits, "the insured must be able to show fault on the part of the uninsured [or underinsured] motorist and the extent of the resulting damages".[3] But while the insured's "ultimate recovery . . . depends upon proof of damages due to the tort of an uninsured [or underinsured] third party, the cause of action against the insurer arises by reason of the written contract"[4]—the policy. The insured may sue the other driver, but a favorable judgment or a settlement is not binding on a nonparty insurer without its consent.[5] Thus, to obtain UIM benefits denied by his insurer, an insured must sue the insurer for breach of contract and prove the amount of damages caused by the tortious fault of the other driver.

The Court holds that an insured's claim for UIM benefits cannot be for breach of contract because the amount he is "legally entitled to recover" from the other driver has not been adjudicated when the insurer denies the claim. But the same is true for almost every breach-of-contract cause of action: the plaintiff asserts a claim on which he cannot prevail until the amount he is legally entitled to recover from the defendant is adjudicated. The existence of a cause of

---

vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

*Id.* § 1952.106.

[2] *Id.* § 1952.103 (defining "underinsured motor vehicle" as "an insured motor vehicle on which there is collectible liability insurance coverage with limits of liability for the owner or operator that were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy").

[3] *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792 (Tex. 1974).

[4] *Id.* at 791–792.

[5] *See State Farm Mut. Auto. Ins. Co. v. Azima*, 896 S.W.2d 177, 177–178 (Tex. 1995) (per curiam); *see also In re Reynolds*, 369 S.W.3d 638, 654 (Tex. App.—Tyler 2012, orig. proceeding) ("Unless the UIM insurer has consented in writing to the suit, the usual result of a consent provision is that the insurer is not bound by a judgment entered in an action prosecuted by its insured against a UIM.").

action for breach of contract does not depend on its eventual success. A defendant's denial of a breach, including its dispute of any amount due, does not mean that the cause of action is premature, unripe, or nonexistent until the plaintiff's right to recover is determined. And a breach-of-contract claim for damages that is not proved is not premature, unripe, or nonexistent; it is merely unsuccessful. Suppose D agrees to pay P whatever X owes him. P claims X owes $Y, which D denies. Can P sue D for breach of contract, even though any amount owed by X remains to be proved? Of course. The manner of proving the amount of damages does not matter. P must prove what X owes using debt principles. An insured in a UIM suit must prove damages using tort principles of negligence and proximate cause. A plaintiff in another breach-of-contract case may be required to prove the benefit of the bargain. As in any breach-of-contract case, the insured claims he is due UIM benefits under his policy, which the insurer denies. The insured's claim is like any other for breach of contract when the amount of damages due is disputed and unliquidated. An insured who proves the amount of his damages caused by a negligent underinsured driver is not only entitled to assert a covered claim against his insurer for breach of its contract to pay UIM benefits; he is entitled to judgment.

To reach the remarkable conclusion that a plaintiff has no cause of action for breach of contract until he proves damages, the Court misreads its decision in *Brainard v. Trinity Universal Insurance Co.*[6] Chapter 38 of the Civil Practice and Remedies Code allows a person to "recover reasonable attorney's fees" on a claim for "an oral or written contract",[7] but only if the opposing party does not tender "payment for the just amount owed" within 30 days "after the claim is

---

[6] 216 S.W.3d 809 (Tex. 2006).

[7] TEX. CIV. PRAC. & REM. CODE § 38.001(8).

3

presented."[8] *Brainard* held that an insured cannot "present" a claim for UIM benefits to an insurer as a statutory prerequisite for recovering attorney fees until the amount of damages has been adjudicated.[9] *Brainard* did not hold that an insured has no breach-of-contract cause of action against his insurer for refusing to pay UIM benefits until the amount of damages has been adjudicated. On the contrary, *Brainard* rendered judgment on the insured's breach-of-contract claim.[10]

The procedural circumstances in *Brainard* are typical of UIM claims. Brainard's husband died in a motor vehicle accident, and she sued the other vehicle owner, Premier, for wrongful death. She demanded that her insurer, Trinity, tender its $1 million UIM coverage limits. Trinity countered with an offer of $50,000. Brainard joined Trinity as a defendant in her lawsuit against Premier, asserting claims for breach of contract and extra-contractual liability. Brainard and Premier settled for Premier's $1 million policy limits. Since that settlement did not bind Trinity, Brainard and Trinity went to trial on her breach-of-contract claim to determine Premier's liability. The jury found that Premier's negligence caused the accident and awarded Brainard $1.01 million in damages and $100,000 in attorney fees.[11] After crediting Trinity with the Premier settlement as well as other benefits Trinity had paid, the trial court rendered judgment against Trinity for $5,000 plus attorney fees.

Trinity appealed, arguing that it was not liable for attorney fees. The issue, we said, "turns

---

[8] *Id.* § 38.002(3).

[9] 216 S.W.3d at 819.

[10] *Id.*

[11] *Id.* at 811.

on the language [of Section 38.002(3)] requiring that 'payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.'"[12] The issue did *not* turn on *whether* Brainard had a contract claim—she did—but *when* she presented that claim to Trinity. Was it when she first demanded the $1 million UIM coverage limits? Or was it not until she obtained a judgment? We made it very clear that Brainard had an action for breach of contract. We said that "an essential element to *recovery* of attorney's fees . . . in a suit *based on contract* is 'the existence of a duty or obligation which the opposing party has failed to meet.'"[13] An unmet duty or obligation is essential to *recovery* based on contract, not to *suing* based on contract. You can *sue* to enforce a duty or obligation that turns out not to exist. You just cannot *win*.

We noted that "the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist."[14] That says two things. First, there is no contractual duty to pay until the right to payment is proved. That is, of course, true in every breach-of-contract action, not just in suits for UIM benefits. Second, the required proof is of the other driver's liability and damages. That is true because it is the statutory measure of coverage. We added: "Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay."[15] Of course not. Claiming and suing do not trigger recovery under any contract.

As noted above, Chapter 38 allows recovery of attorney fees on a contract claim only if the

---

[12] *Id.* at 818.

[13] *Id.* (emphasis added) (citation omitted).

[14] *Id.*

[15] *Id.*

person to whom the claim is presented fails to timely pay "the just amount owed".[16] "Where there is no contractual duty to pay," we said in *Brainard*, "there is no just amount owed. Thus, under Chapter 38, a claim for UIM benefits is not presented until the trial court signs a judgment establishing the negligence and underinsured status of the other motorist."[17] We continued:

> Brainard's contention that a UIM policy is to be treated like other contracts, for which damages are liquidated in a judicial proceeding and attorney's fees incurred are recoverable, misinterprets the nature of UIM insurance. The UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party. Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined.
>
> Because the contract did not require Trinity to pay UIM benefits before Premier's negligence and underinsured status were determined, Brainard did not present a contract claim before the trial court rendered its judgment . . . .[18]

One may disagree with *Brainard*'s holding that Chapter 38 does not allow attorney fees on a UIM claim,[19] but neither that holding nor anything in the opinion's reasoning suggests that a suit

---

[16] TEX. CIV. PRAC. & REM. CODE § 38.002(3).

[17] *Brainard*, 216 S.W.3d at 818.

[18] *Id.* (citation omitted).

[19] I joined the Court's unanimous opinion in *Brainard*, but I now think that the attorney-fee issue was incorrectly decided. To recover attorney fees on a contract claim under Chapter 38, "the claimant must present the claim to the opposing party", and "payment for the just amount owed must not have been tendered [within 30 days] after the claim is presented." TEX. CIV. PRAC. & REM. CODE § 38.002(2)–(3). A UIM claim is different from some contract claims because it turns on a third party's liability, but that hardly makes it unique. A simple agreement to pay commissions may turn on a third person's liability for sales claimed to have been made. The use of tort principles to determine the third person's liability may make the UIM claim unusual, but I do not see how that matters to Chapter 38. I see no reason not to treat UIM claims like other contract claims for which damages are liquidated in a judicial proceeding before recovery is allowed. Under Chapter 38, presentment of a contract claim can and should occur well before the right to recover on it is established, even when a claim is disputed, legally and factually, and any amount due is contested. Indeed, the statute's threat of attorney fees to incentivize early payment of claims would amount to little if a defendant could wait to respond until suffering an adverse judgment. A defendant can dispute everything about a claim and still owe Chapter 38 attorney fees for not paying a "just amount" when it was presented, as shown by later proof. That is the whole point of Chapter 38. Nor is uncertainty in "the just amount owed" for determining whether payment was timely tendered to avoid attorney fees unique to UIM claims. We held long ago that attorney fees are not recoverable under Chapter 38 when the claim presented is excessive. *Findlay v. Cave*, 611 S.W.2d 57, 58

6

against an insurer for UIM benefits is not an action for breach of contract. The Court acknowledges that Brainard sued her UIM carrier for breach of contract.[20] Even so, the Court states, under *Brainard*, "litigation between the insured and his carrier is on the UIM contract but not for its breach, which cannot occur until the underlying conditions precedent of liability and damages are established."[21] The Court then ignores our rendition of judgment for Brainard *on her claim for breach of contract*, including prejudgment interest. A person cannot both have and not have a contract claim at the same time. By rendering judgment for Brainard on the breach-of-contract claim she asserted in her pleadings, the Court endorsed that procedure for litigating UIM coverage. *Brainard* only differentiated between the requirements for pleading a claim and the presentment required by Chapter 38 for recovering attorney fees. *Brainard* held that a claim for UIM benefits can be pleaded and prosecuted with recovery subject to proof of a UIM's liability and the damages caused, but that statutory presentment entitling the claimant to attorney fees cannot occur until there is a "just amount owed", after those facts are proved.

Today, the Court holds that an insured cannot sue his UIM insurer for breach of contract, as we held Brainard successfully did. Instead, the insured must sue under the Uniform Declaratory

---

(Tex. 1981) ("A creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt." (citations omitted)). Applying *Findlay*, *Brainard* may have reached the correct result. Brainard "presented" a claim for $1 million in UIM benefits, 200 times the $5,000 Trinity owed.

No party to the present case has asked that *Brainard*'s no-attorney-fee rule be reconsidered, and our doing so would require consideration of general *stare decisis* principles and the general acceptance of the rule for 15 years, although the present declaratory-judgment action is an attempt to avoid its consequences. Additionally, it is not clear how *Findlay* would apply here. Irwin demanded his $50,000 UIM limits even though he was at most entitled to $20,000 after offsetting the amount recovered from the other driver's insurer, but Allstate offered only $500. Including costs, Irwin recovered about $52,000 from Allstate.

[20] *Ante* at 4.

[21] *Ante* at 5.

Judgments Act (UDJA), as Irwin did here.[22] But Irwin did not seek declaratory relief; he sought only damages. His live pleadings before trial asserted: "Plaintiff brings this suit to recover damages for personal injuries sustained in a motor vehicle collision on or about April 5, 2016." He mentioned the UDJA only once:

> Plaintiff seeks a declaratory judgment pursuant to [the UDJA] that he is entitled to recover from Defendant Allstate his damages resulting from the motor vehicle collision of April 5, 2016, that those damages fall within the coverage afforded him under the Defendant Allstate's insurance policy, and specifying the amount of damages, attorney fees, interest, and court costs that Defendant Allstate is obligated to pay.

Neither his prayer nor the judgment he obtained mention declaratory relief.

Before trial, the parties stipulated that the driver who hit Irwin was negligent and that Irwin had UIM coverage under the insurance policy. There were no legal issues, only fact issues relating to damages. The only question asked to the jury was: "What sum of money, if paid now in cash, would fairly and reasonably compensate *Daniel Wes Irwin* for *his* injuries, if any, that resulted from the occurrence in question?" The jury answered separately for past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past loss of earning capacity. Deciding only fact issues such as those is inconsistent with the UDJA's stated purpose, which is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations".[23] And it is plainly outside the UDJA's stated

---

[22] TEX. CIV. PRAC. & REM. CODE ch. 37.

[23] *Id.* § 37.002(b); *see also Shahin v. Mem'l Hermann Health Sys.*, 527 S.W.3d 484, 491 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (holding that the declaratory-judgment mechanism was inapplicable because appellant's issues were "all questions of fact"); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 573 (Tex. App.—San Antonio 2014, pet. denied) ("Purely factual disputes are not properly resolved with a declaratory judgment."); *City of Watauga v. Taylor*, 752 S.W.2d 199, 205–206 (Tex. App.—Fort Worth 1988, no writ) (holding that "a suit for damages arising out of alleged negligence and an alleged unconstitutional taking, both questions of fact", "is clearly not a declaratory judgment case", because otherwise "every action for damages would be a declaratory judgment").

scope of relief:

> A person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.[24]

The Court mandates the use of a UDJA action to try the tort issues used to determine the extent of UIM coverage. Here, the parties stipulated to the uninsured motorist's negligence, but in other cases, they might not. The UDJA action would then be, in every respect, indistinguishable from a simple tort suit. If the UDJA can be used that way in one situation, there is nothing to limit its use in all tort cases. That would provide an avenue for attorney-fee awards not just in UIM cases, but in all tort cases.[25]

It seems to be very bad policy and, more importantly, bad law to allow a UIM claim to be brought as a declaratory-judgment action. The claim does not fit within the UDJA text. A declaratory-judgment action is unnecessary when there is a perfectly suitable contract claim. And the only issues are negligence and damages, which are not declarable. Using the UDJA to try what amounts to a simple tort claim is a clear misuse of the statute.

This case is like *Brainard* in one respect: it is not about how UIM cases are to be pleaded and tried but rather about how to recover attorney fees. Today's ruling abolishes Chapter 38's requirement that before attorney fees can be recovered, the claimant must present the "just amount owed", as we upheld in *Brainard*. Now attorney-fee awards will be within each trial court's

---

[24] TEX. CIV. PRAC. & REM. CODE § 37.004(a); *see also Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 700 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that the declaratory-judgment mechanism is "an improper remedy" when the "trial court's declaratory judgment simply repeats the factual findings of the jury and does not 'declare rights, status, [or] other legal relations,' as required by the Declaratory Judgments Act").

[25] *Averitt v. PriceWaterhouseCoopers L.L.P.*, 89 S.W.3d 330, 333–334 (Tex. App.—Fort Worth 2002, no pet.) ("A potential defendant may not, however, use a declaratory judgment action to determine potential tort liability.").

discretion.[26] Even if a UIM case were properly asserted under the UDJA—and for the reasons I have stated, it cannot be—attorney-fee awards should not be an exception to Chapter 38.[27]

\*     \*     \*     \*     \*

I respectfully dissent.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** May 21, 2021

---

[26] TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

[27] *See Allstate Ins. Co. v. Jordan*, 503 S.W.3d 450, 456–457 (Tex. App.—Texarkana 2016, no pet.).